UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRIAN SHAWN SAUDER,

     Plaintiff,

v.                                                             Case No. 3:18cv2192-RV-HTC

CAPTAIN HARKIN,
SERGEANT GOYER,
OFFICER STANLEY,
FLORIDA DEPARTMENT OF CORRECTIONS,

     Defendants
_____/

REPORT AND RECOMMENDATION

Plaintiff, Brian Shawn Sauder, brings an action under 42 U.S.C. § 1983

alleging excessive use of force and state law battery by two prison guards, Goyer

and Stanley, and failure to train, supervise or discipline those guards by Captain

Harkin.[1]  ECF Doc. 17.  Sauder also brings a count against the Florida Department

of Corrections ("FDOC") for injunctive relief, seeking to enjoin the FDOC from

housing Sauder at any facility where Goyer and Stanley are employed.  *Id.*  The

FDOC filed a motion to dismiss, arguing Sauder failed to exhaust his administrative

---

[1] Plaintiff's first amended complaint also contained a failure to train claim against Colonel
Johnson, but Plaintiff subsequently voluntarily dismissed Johnson as a defendant.  ECF Doc. 32.

remedies.  ECF Doc. 43.  Upon review of Sauder's response, ECF Doc. 52, as well as Sauder's Notice of Exhaustion of Administrative Remedies (ECF. Doc. 5), the undersigned respectfully recommends the FDOC's motion to dismiss be granted.

## I.    Factual Background

Sauder alleges the following in this amended complaint.  ECF Doc. 17.  On June 9, 2018, Plaintiff was a prisoner housed in the H-Dorm Confinement Unit at Walton Correctional Institution.  On that date, Sergeant Goyer and Officer Stanley escorted Plaintiff from the showers back to his confinement cell.  Plaintiff was fully restrained, with his hands handcuffed behind his back and his ankles shackled. When Plaintiff, Sergeant Goyer, and Officer Stanley arrived at Plaintiff's cell, Sergeant Goyer requested Plaintiff provide information regarding an alleged gang "hit" that was placed against Plaintiff's life in 2010.  Plaintiff declined to comment on the alleged gang hit.

After Plaintiff declined to comment on the alleged gang hit, Sergeant Goyer forcefully grabbed Plaintiff and slammed him face-first onto the concrete floor while Plaintiff was still fully restrained and unable to defend himself or protect himself from the fall.  Plaintiff suffered significant injuries to his head and his right eye. Sergeant Goyer then jumped on Plaintiff's back and placed all his bodyweight on Plaintiff's lower back, causing significant injury to Plaintiff's back.

Sergeant Goyer and Officer Stanley lifted Plaintiff by grabbing him by his arms and carrying him downstairs.  Once downstairs, Sergeant Goyer and Officer Stanley pulled both of Plaintiff's arms, which were still handcuffed behind his back, nearly over the top of his head, causing significant injury to Plaintiff's shoulders and rotator cuffs.  Sergeant Goyer and Officer Stanley then threw Plaintiff into the shower, where another officer instructed Plaintiff to make a statement on a video recorder.  Captain Harkin used his cell phone to take pictures of Plaintiff's head and right eye.

Prior to Plaintiff's injuries on June 9, 2018, Colonel Johnson and Captain Harkin received numerous reports that Sergeant Goyer and Officer Stanley had multiple prior incidents involving the use of excessive force against inmates at Walton Correctional Institution and took no action to prevent future use of excessive force by either of them.

## II.    Legal Standards

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion of all available administrative remedies is a mandatory precondition to suit.  *See Booth v. Churner*, 532 U.S. 731, 739 (2001).  The

exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *See Booth*, 532 U.S. at 734, 741. The requirement is not subject to waiver by a court or futility or inadequacy exceptions. *See id.* at 741 n.6.

Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006); *see also id.* at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204 (2007). A court must dismiss an action if satisfied the inmate failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

In *Jones*, the Supreme Court held that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules -- rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

The defense of failure to exhaust should be treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner*, 541 F.3d at 1082. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in

that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citing *Bryant*, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

## III.   Discussion

### A. FDOC Grievance Procedures

The Florida Department of Corrections ("FDOC") provides a grievance procedure and set of requirements for its inmates, which is codified in the Florida Administrative Code 33-103 through 33-103.018.   The grievance procedures generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary.  *See* Fla. Admin. Code r. 33-

103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d

1215, 1218 (11th Cir. 2010).[2]

B. Plaintiff's Grievances

On August 23, 2008, Plaintiff filed an informal grievance on form DC6-236,

while he was at Santa Rosa CI, in which he complained of failure to receive proper

medical treatment from Santa Rosa CI for the injuries he received in the excessive

force incident.  ECF Doc. 52-1 at 1; Fla. Admin. Code Ann. r. 33-103.005(2).  On

the form, Sauder checked the box "medical" when indicating to whom the informal

grievance should be directed.  He also wrote "Att: Dr. Rodriguez" at the top of the

informal grievance.  In the text of the grievance, Sauder complained that he had seen

the sick call nurse four times while he was at Walton CI and that he was "put in to

see the medical doctor," but was transferred to Santa Rosa CI before he could see

the doctor.  ECF Doc. 52-1 at 1.  He complains that the sick call nurse in J-Dorm at

Santa Rosa CI told him "It doesn't matter how many times you see sick call, I'm not

putting you in to see the doctor!"  *Id.*  He writes that he is "being denied to see the

doctor."  *Id.*

While Sauder mentions the "use of force on 6-9-18" as the source of his

injuries, he nowhere complains that it was excessive or unjustified.  He further does

---

[2] For complaints regarding medical treatment, an inmate may bypass the informal grievance step.
*See* Fla. Admin. Code r. 33-103.005(1).

not reference any of the individual defendants who he now sues.  He provides no description of the use of force events that occurred.  Moreover, the grievance was addressed to Santa Rosa CI, while the use of force occurred at Walton CI.  Indeed, Santa Rosa CI's response addressed only Sauder's medical complaint.  The institution denied the grievance finding that, "On 8/2/18 you were seen by the clinician and he addressed your complaint of blurred vision to the right eye.  On 8/23/18 you were seen in sick call and you have been referred to see the clinician again."  ECF Doc. 52-1 at 1.

On August 28, 2018, Sauder appealed the denial of his informal grievance by submitting a Request for Administrative Remedy or Appeal to the Warden.  ECF Doc. 52-1 at 2.  This request also addressed only Sauder's complaints about his failure to receive proper medical treatment from Santa Rosa CI.  Sauder begins the request with, "I am filing this emergency grievance concerning medical, for constitutional failure to treat a known serious medical condition."  ECF Doc. 52-1 at 2.  Also, while he mentions that "I was assaulted by staff members at Walton CI on June 9, 2018," he only does so to explain the source of his back and eye injury. *Id.*  In his final sentence, he states, "The remedy I am seeking is that I receive the proper medical attention that is required for my injuries." *Id.*

This formal grievance, like the informal grievance, clearly addresses treatment of his medical condition and not the excessive force that allegedly caused

his injuries.  Also like the informal grievance, this formal grievance was directed to

Santa Rosa CI and does not reference any of the Defendants.  Moreover, in denying

the appeal, the Warden stated, "[b]y review of your medical file, it has shown you

have received proper medical treatment."  ECF Doc. 52-1 at 3.

Sauder appealed the Warden's denial to the FDOC Secretary on September

11, 2018.  This appeal fared no better.  Sauder begins the appeal with, "I am filing

this grievance on medical, for constitutional failure to treat a known serious medical

condition."  ECF Doc. 52-1 at 4.  Sauder also writes, "My back and right eye were

injured on 6-9-18, at Walton CI, during an excessive use of force in which my

attorney has filed a lawsuit."  *Id.*  This statement clearly shows that he was not asking

FDOC officials to resolve any grievance he had regarding the subject excessive use

of force, but instead, advises the FDOC that he has already filed suit (and thus

presumably exhausted his administrative remedies).  Sauder's appeal, like his

informal and formal grievance, fails to describe the excessive force incident or name

the individual defendants.  The appeal relates solely to his complaints about

improper medical treatment.  Indeed, in denying the appeal, the Secretary writes, "It

is the responsibility of your health care staff to determine the appropriate treatment

regimen for the condition you are experiencing," and "[r]ecords reviewed that you

were seen by the Physician on 9/18/2018 where you could address your medical

concerns at that time."  ECF Doc. 52-1 at 5.

A plaintiff must exhaust his available administrative remedies as to *each claim* and *each party* set forth in his complaint. *See Martinez v. Minnis*, 257 F. App'x 261, 265 n. 5 (11th Cir 2007) (finding prisoner who filed grievance concerning numerous claims failed to exhaust a retaliation claim because grievance "did not mention retaliation or use any words synonymous with or indicating retaliation, nor did it provide the BOP with notice of allegedly retaliatory action or the opportunity to correct it"). Here, individually or collectively, Sauder's grievances did not give the institution or the FDOC reasonable notice that he was challenging the alleged excessive use of force or a real opportunity to address the claim of excessive use of force prior to being hauled into court. *See Jones*, 549 U.S. at 204. Any fair reading of the grievances and appeal to the Secretary leads to the conclusion that Sauder was challenging only the medical treatment he received, not the excessive force itself. Moreover, to the extent Plaintiff argues the grievances should be construed as complaining about both the use of excessive force at Walton CI and the lack of medical treatment he contends occurred at Santa Rosa CI, that argument fails for the reasons set forth above and for the additional reason that the FDOC's grievance procedures require that each grievance address only one issue or complaint. Fla. Admin. Code Ann. R. 33-103.005(2)(b)2. Sauder did not properly exhaust his claims regarding the use of excessive force on June 9, 2018, and the FDOC's motion to dismiss should be granted. *See Higginbottom*, 223 F.3d at 1261.

Case No. 3:18cv2192-RV-HTC

Accordingly, it is respectfully RECOMMENDED:

1.      That the FDOC's motion to dismiss be GRANTED.

2.      That the FDOC be terminated as a defendant.

At Pensacola, Florida, this 6th day of November, 2019.


*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.